UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LPA ENERGY GROUP PROPRIETARY LIMITED,<br><br>Plaintiff,<br><br>-against-<br><br>SIMON ATKINSON, KARA HASKINS, DENISE LENGEMANN, AND CONVEY LIGHTING LLC,<br><br>Defendants. | : | **ORDER DENYING MOTION TO DISMISS**<br><br>3:25-CV-1741 (VDO) |

**VERNON D. OLIVER**, United States District Judge:

LPA Energy Group Proprietary Limited ("LPA" or "the Company") filed this action against Convey Lighting LLC ("Convey") and three individuals, Simon Atkinson, Kara Haskins, and Denise Lengemann ("Individual Defendants") (collectively, "Defendants"), alleging trade secret misappropriation under the Defend Trade Secrets Act of 2016 ("DTSA"), trade secret misappropriation under the Connecticut Uniform Trade Secrets Act ("CUTSA"), and other claims under Connecticut law. Before the Court are Defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7), arguing that Plaintiff failed to state a trade secret misappropriation claim and that the mandatory joinder of a necessary and indispensable party destroys jurisdiction. For the following reasons, the motions to dismiss are **denied**.

# I. BACKGROUND

## A. The Parties

LPA, a lighting and energy solutions company based in Australia, provides a wide range of lighting products and services.[1] LPA employs more than 150 lighting and other professionals, operates across eleven global offices, and has delivered lighting projects for commercial and retail customers on every continent except Antarctica.[2] LPA offers end-to-end lighting services to customers and operates in a dual-role as both a distributor and supplier.[3] LPA's Global Executive Team, which is based in Australia, relies on local leadership at each of the office locations to manage the Company's business affairs across the various regions around the world in which LPA operates.[4]

The Individual Defendants are former employees of LPA's subsidiary.[5] Atkinson served as President of LPA's United States operations from 2015 until his resignation in August 2025.[6] LPA's Executive Team afforded Atkinson discretion to run the Company's U.S. operations, to maintain LPA's confidential information, and to serve as the primary or a key contact for LPA's U.S. customer base.[7] While in charge of LPA's U.S. operations, Atkinson retained control over managing the Company's relationships with its U.S. customers, and

[1] Verified Compl., ECF No. 1 ¶ 18.

[2] *Id.* ¶ 19.

[3] *Id.* ¶ 21.

[4] *Id.* ¶ 20.

[5] *Id.* ¶¶ 11–13.

[6] *Id.* ¶¶ 5, 30.

[7] *Id.* ¶ 31.

frequently refused to share the customer contact information with anyone else at the Company.[8]

Lengemann served as Senior Project Manager from 2015 until her resignation in May 2025.[9] Lengemann's job responsibilities, which included supervisory authority over LPA's other Project Managers, gave her direct access to commercially sensitive information about LPA's finances, pricing, costs, and customers.[10]

Haskins served as Financial Controller from 2016 until her termination in September 2025.[11] Haskins's job responsibilities, which included signing off on annual audit reports of LPA financial records and collecting and providing documentation to LPA's auditors, afforded her access to commercially sensitive information about LPA's finances, pricing, costs, and customers.[12]

Convey is a limited liability company with a principal place of business in Glastonbury, Connecticut.[13] Convey is a commercial and retail lighting supplier that provides products and services to distributors like LPA for lighting projects, including "tape and strip lighting products."[14] Convey was established by the Individual Defendants while they were still employed by LPA and, at no time during their employment did any of the Individual

---

[8] *Id.* ¶ 37.

[9] *Id.* ¶¶ 59, 63.

[10] *Id.* ¶¶ 60–61.

[11] *Id.* ¶¶ 15, 58.

[12] *Id.* ¶¶ 53, 55.

[13] *Id.* ¶ 14; *see also* Compl. Ex. 4, ECF No. 1-4 at 2.

[14] ECF No. 1 ¶¶ 65, 67.

Defendants disclose that they had any financial interest in Convey.[15] The Individual Defendants are listed as Convey's members on its Certification of Organization filed with the Connecticut Secretary of State on January 6, 2022.[16] Members of Convey also include non-parties James O'Blaney and Steven Espinoza.[17] The address of Convey's principal place of business is the same address as Atkinson and Lengemann's residential address.[18]

**B. LPA's Code of Conduct and Trade Secrets**

All LPA employees, including employees of its subsidiaries, are subject to LPA's Employee Code of Conduct (the "Code of Conduct") upon the commencement of their employment, a copy of which is provided to them and is permanently accessible on LPA's employee portal.[19] The Code of Conduct instructs employees that they may not compete with LPA by using knowledge gained during the course of their employment:

> Employees must not set up or engage in private business or undertake other employment in direct or indirect competition with LPA using knowledge and/or materials gained during the course of employment with LPA. Engaging in other business interests during work hours may result in disciplinary action.[20]

The Code of Conduct also provides that "Confidential Information relating to LPA and/or its clients, suppliers and/or other contacts … must be protected and used only in the interests of LPA."[21] Confidential Information, in turn, is defined as the following:

---

[15] *Id.* ¶ 3, 73.

[16] ECF No. 1-4 at 2–3.

[17] *Id.*

[18] ECF No. 1 ¶ 14.

[19] *Id.* ¶ 39.

[20] Compl. Ex. 1, ECF No. 1-1 at 7.

[21] *Id.* at 8.

> Confidential Information includes, but is not limited to, trade secrets, know how, financial information, business plans, business methods, client lists, any information relating to clients billing details, lists of suppliers and contractors, marketing strategies, commercially sensitive information, alarm codes, passwords, business tactics, business intelligence and/or any other information that LPA indicates to be confidential or that a reasonable person would expect from its nature to be confidential, concerning LPA and any related entity. This does not include information and materials that are in the public domain other than by way of unauthorised disclosure.[22]

The Individual Defendants, as a condition of their employment with LPA's subsidiary, were required to abide by the terms of the Code of Conduct, including the requirements that employees avoid all conflicts of interest and protect and to not misuse LPA's Confidential Information.[23]

### C. Atkinson's Separation Agreement

After negotiating the terms of a separation agreement in the form of a Letter of Acknowledgement (the "Separation Agreement"), Atkinson executed that agreement on July 16, 2025.[24] The Separation Agreement included a non-competition provision, a non-solicitation provision, and a confidentiality provision.[25]

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief

---

[22] *Id.*

[23] ECF No. 1 ¶ 62.

[24] *Id.* ¶¶ 45–46.

[25] Compl. Ex. 2, ECF No. 1-2 at 2–3.

above the speculative level.'" *Operating Loc. 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Rule 12(b)(7)

Under Rule 12(b)(7) of the Federal Rules of Civil Procedure, a party may move to dismiss when there is a "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "Rule 19 requires joinder only when the court cannot accord complete relief among the existing parties or when the disposition of the action would impair the ability of absent parties to protect their interests." *Thieriot v. Laggner*, No. 24-2500, 2025 WL 3295111, at *3 (2d Cir. 2025) (summary order). The structure of Rule 19 is such that it "makes clear that it is focused on whether a lawsuit can proceed with the parties *currently* before the court." *Seneca Nation v. Hochul*, 58 F.4th 664, 669 (2d Cir. 2023). Where there is "insufficient or contradictory evidence concerning whether a party is necessary," courts may deny such motions. *Quinn v. Fishkin*, 117 F. Supp. 3d 134, 139 (D. Conn. 2015).

## III. DISCUSSION

### A. Defendants' 12(b)(6) Motion

Defendants contend that Plaintiff failed to state trade secret misappropriation claims under the DTSA and CUTSA, arguing that Plaintiff (1) failed to identify actual trade secrets,[26]

[26] ECF No. 68-1 at 15–19.

(2) failed to allege it took any measures to protect its purported trade secrets,[27] and (3) failed to adequately allege that economic value is derived from its purported trade secrets.[28] The Court disagrees.

"[A] defendant misappropriates a trade secret (1) when it acquires a trade secret by improper means, or (2) discloses or uses the trade secret without consent." *Sunbelt Rentals, Inc. v. McAndrews*, 552 F. Supp. 3d 319, 330 (D. Conn. 2021) (cleaned up). Under the DTSA, a trade secret incudes "all forms and types of financial, business, scientific, technical, economic, or engineering information" where "(A) the owner thereof has taken reasonable measures to keep such information secret"; and (B) the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). Under CUTSA, a trade secret includes "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Conn. Gen. Stat. § 35-51(d).

First, at this juncture, where the case is at its most nascent stage, Plaintiff has adequately identified its trade secrets. Plaintiff has identified information that is not readily ascertainable

---

[27] *Id.* at 19–21.

[28] *Id.* at 21–22.

through public sources and that its secrecy provides independent economic value, including "non-public customer information, such as customers' contact information and information about customers' needs, preferences, and historical orders, as well as information regarding LPA's and other suppliers' pricing and costs."[29] As Plaintiff notes, these categories of information would give a competitor an advantage without having to account for the time and resources Plaintiff invested in its customer relationships. Thus, the categories of information alleged in the Complaint are routinely found to be protected by trade secret law. *See Jasco Tools, Inc. v. Dana Corp. (In re Dana Corp.)*, 574 F.3d 129, 152 (2d Cir. 2009) ("Confidential proprietary data relating to pricing, costs, systems, and methods are protected by trade secret law."); *see also N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999) ("A customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected at the owner's instance against disclosure to a competitor, provided the information it contains is not otherwise readily ascertainable." (cleaned up)); *Continental Indus. Group, Inc. v. Altunkilic*, 788 F. App'x 37, 40–41 (2d Cir. 2019) (customer and supplier lists, pricing and payment terms, shipping information, and customer product mixes are "routinely afforded trade secret protection").

Second, Plaintiff has adequately pleaded that it has taken reasonable measures to protect its trade secrets. Generally, reasonable measures can include "the use of confidentiality agreements, password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential in an employee handbook, and frequently reminding employees of the need to maintain confidentiality." *Ad Lightning*

[29] ECF No. 1 ¶¶ 158, 172.

*Inc. v. Clean.io, Inc.*, 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020) (cleaned up). Plaintiff pleaded that it protects its claimed trade secrets by (1) restricting its access to senior executives and sales personnel, (2) using a virtual private network for employee remote access to LPA systems and information, (3) password protecting its computer systems, and (4) implementing physical security measures.[30] Plaintiff also makes all employees subject to the Code of Conduct, which prohibits employees from misusing Confidential Information.[31] At this juncture, this is sufficient to withstand dismissal. *See Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (finding "reasonable measures to keep the information secret by making those who use it subject to confidentiality provisions and limitations, and only making it accessible through strictly controlled servers[.]")

The Court finally concludes that Plaintiff has adequately pleaded that Defendants misappropriated its trade secrets. Under the DTSA, a trade secret is misappropriated when it is acquired by a person "who knows or has reason to know that the trade secret was acquired by improper means" or is disclosed or used "without express or implied consent by a person who . . . used improper means to acquire knowledge of the trade secret." 18 U.S.C. § 1839(5)(A)–(B). Similarly, under CUTSA, misappropriation includes: "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who . . . used improper means to acquire knowledge of

[30] *Id.* ¶¶ 27–29.

[31] *Id.* ¶ 39.

the trade secret." Conn. Gen. Stat. § 35-51(b). Simply put, the Individual Defendants proceeded to create a competitor company, Convey, while they were still employed by LPA or its subsidiary and used their access to LPA's customers and other proprietary information through their employment. Plaintiff has pleaded that the Individual Defendants: (1) established a lighting products and services company, Convey, for their own financial gain while they were still employed by LPA or its subsidiary, (2) misappropriated LPA's trade secrets obtained from their employment with LPA or its subsidiary, (3) diverted customers from LPA to Convey, and (4) failed to return LPA-issued devices after their employment ended.[32] And because the Individual Defendants were subject to LPA's Code of Conduct, they were well aware that they were violating duties of confidentiality by creating Convey to compete with Plaintiff in the lighting market. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 994 (2d Cir. 1983) (explaining that a principal-agent relationship can impose a duty not to use confidential knowledge acquired during employment in competition with the principal). The timing and circumstances regarding the Individual Defendants creating Convey plausibly shows that Defendants misappropriated Plaintiff's trade secrets.

Accordingly, the motion to dismiss for failure to state a claim is **denied**.

### B. Defendants' 12(b)(7) Motion

Defendants contend that Plaintiff's failure to join an indispensable party, LPA Lighting Partners, Inc. ("LPA-CT"), requires dismissal.[33] Specifically, Defendants argue that LPA-CT

[32] ECF No. 1 ¶¶ 3, 4, 6

[33] ECF No. 68-1 at 22.

is a necessary and indispensable party because it, as opposed to Plaintiff, was the actual employer of the Individual Defendants, and that its mandatory joinder destroys jurisdiction.[34]

To determine whether a case may proceed without an absent party, the Court must first determine whether a nonparty is a necessary party under Rule 19(a). *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000); *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 681 (2d Cir. 1996). Under Rule 19(a), a party is necessary if "in that person's absence, the court cannot accord complete relief among the existing parties" or "that person claims an interest relating to the subject of the action" such that it would "impair or impede the person's ability to protect the interest" or would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A)–(B). A necessary party must be joined if feasible. *Id.* Joinder is not feasible where joining the party would deprive this Court of subject matter jurisdiction or make venue improper. *See* Fed. R. Civ. P. 19(a)(1), (3); *see also Jayboy Music Corp. v. Metro-Goldwyn-Mayer Pictures, Inc.*, No. 05-CV-8575, 2006 WL 1738079, at *2 (S.D.N.Y. June 23, 2006). If joinder of a "necessary" party under Rule 19(a) is not feasible, the court consults Rule 19(b), which "requires courts to consider whether, 'in equity and good conscience,' the party is one without whom the action between the remaining parties cannot proceed—or, in the traditional terminology, whether the absent party is 'indispensable.'" *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 132 (2d Cir. 2013) (quoting Fed. R. Civ. P. 19(b)).

[34] ECF No. 68-1 at 25–31.

The Court finds that LPA-CT is a necessary party to this action. In this analysis, the Court must consider the "pleadings as they appear at the time of the proposed joinder," *Associated Dry Goods v. Towers Fin. Corp.*, 920 F.2d 1121, 1123–24 (2d Cir.1990). The parties do not seriously dispute that LPA-CT was the former employer of the Individual Defendants. As the former employer, LPA-CT can claim an "interest relating to the subject of the action," Fed. R. Civ. P. 19(a)(1)(B)(i), because it could independently raise any of the claims Plaintiff asserts here, which are based on alleged unlawful conduct while the Individual Defendants were employed by LPA-CT: breach of contract, CUTSA, CUTPA, breach of fiduciary duties, breach of duty of loyalty, tortious interference with contractual relations, tortious interference with business expectancies, conversion, civil theft, unjust enrichment, and civil conspiracy. Indeed, the Complaint begins in the first paragraph describing a dispute arising from employment. LPA-CT's interest would leave the Individual Defendants "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). LPA-CT is thus a party "whose ability to protect their interests would be impaired because of that party's absence from the litigation." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 387 (2d Cir. 2006).

While LPA-CT is a necessary party, the Court need not determine whether it is an indispensable party because joinder is feasible. Defendants argue that joinder of LPA-CT will defeat diversity jurisdiction and that had LPA-CT been named a plaintiff in the case, diversity jurisdiction would not exist. But the Court has federal question jurisdiction over the DTSA claim and supplemental jurisdiction over the state law claims.[35] Where federal question

[35] *See* ECF No. 1 ¶ 15.

jurisdiction is asserted, a complaint "may be dismissed for want of subject-matter jurisdiction if [the federal claim] is not colorable, i.e., if [the federal claim] is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 n.10 (2006); *accord Doody v. Bank of Am., N.A.*, 709 F. Supp. 3d 71, 78 (D. Conn. 2024). The DTSA provides a federal claim for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). "Misappropriation" includes either "acquisition of a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means," or "disclosure or use of a trade secret of another without express or implied consent," in certain circumstances. 18 U.S.C. § 1839(5). As discussed above, Plaintiff purports to seek relief under the DTSA for the misappropriation of information that is not readily ascertainable through public sources, including "non-public customer information, such as customers' contact information and information about customers' needs, preferences, and historical orders, as well as information regarding LPA's and other suppliers' pricing and costs."[36] Plaintiff alleges not only that the Individual Defendants created a competitor company, Convey, while they were still employed by LPA or its subsidiary,[37] but also that they encouraged LPA customers to use products and services supplied by their own competing companies—with no disclosure of these activities to Plaintiff's senior global leadership—to the financial and reputational detriment of Plaintiff.[38]

---

[36] *Id.* ¶¶ 158, 172.

[37] *Id.* ¶ 73.

[38] *Id.* ¶¶ 3–4.

These allegations as to the DTSA claim are more than adequate to meet the colorable standard sufficient to confer federal question jurisdiction, as the claim is not insubstantial. *See Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 327 (E.D.N.Y. 2020) (finding DTSA claim not insubstantial where the complaint pleads that defendants misappropriated customer lists and pricing information relating to services used in interstate commerce). Thus, joinder of LPA-CT would not deprive the Court of subject matter jurisdiction.

Accordingly, the motion to dismiss for failure to join a required party is **denied**.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court **denies** Defendants' motions to dismiss. But Plaintiff must join LPA Lighting Partners, Inc. as plaintiff in this action if it wishes to proceed. Within **21 days** of this order, Plaintiff may file an amended complaint. Defendants shall answer or otherwise file a response within **14 days** of the filing of the amended complaint.

**SO ORDERED.**

Hartford, Connecticut
September 10, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge